**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| RALPH FELICIANO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>RED McCOMBS HYUNDAI NORTHWEST GP, L.L.C.,<br><br>*Defendant.* | Case No. 5:26-cv-00200-JKP-ESC |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(c) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Plaintiff Ralph Feliciano ("Plaintiff") respectfully opposes Defendant Red McCombs Hyundai Northwest GP, L.L.C.'s ("Defendant" or "McCombs") Federal Rule of Civil Procedure 12(c) Motion for Partial Judgment on the Pleadings (the "Motion"), ECF No. 17, for the reasons stated herein.

## I. INTRODUCTION

Plaintiff's Complaint makes it abundantly clear that Plaintiff received both prerecorded calls and telemarketing text messages despite being registered on the National Do-Not-Call Registry (the "DNCR") and without consent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227(b)(1)(A)(iii), (c)(5). Defendant now seeks to dispose of liability for the telemarketing text messages it sent to Plaintiff from telephone numbers it ***admitted*** it operates. *See* Answer ¶¶ 19–20, ECF No. 7.

To do so, Defendant raises the argument this Court has disposed of numerous times: that the term "telephone call" in 47 U.S.C. § 227(c)(5) does not encompass text messages. This argument fails and the Motion should be denied.

## II. STATEMENT OF FACTS

Plaintiff is the sole subscriber of the residential telephone number ending in 5901 (the "5901 Number"), which he registered on the national do-not-call registry (the "DNCR") on December 4, 2020. Compl. ¶¶ 10, 31, ECF No. 2. Defendant is a Texas automobile dealership engaged in the sale of vehicles and automotive services to consumers. *Id.* ¶ 14.

On September 20, 2025, Defendant sent a prerecorded call from its (210) 702-2013 number to Plaintiff's 5901 Number. *Id.* ¶¶ 15, 17. Because Plaintiff did not answer his telephone after it rang, a voicemail containing a prerecorded message was left on Plaintiff's phone, which identified the caller as being "Brandy with Red Macum, Hyundai Northwest" and asking Plaintiff if he "had some time to stop on by for a test drive with us today." *Id.* ¶¶ 16–17. Defendant's Answer confirms that it "operated telephone number (210) 702-2013." Answer ¶ 19, ECF No. 7.

After receiving no response from Plaintiff, Defendant began sending him telemarketing text messages from a different telephone number. Compl. ¶ 18. Beginning on September 21, 2025, Defendant sent or caused to be sent approximately five telemarketing text messages to Plaintiff's 5901 Number from its (210) 361-9321 number. *Id.* These messages came from "Vinessa at Red McCombs Hyundai Northwest" and asked whether Plaintiff wanted to "browse [their] inventory online or . . . talk to a Sales Consultant[.]" *Id.* Defendant's Answer confirms that it also "operated telephone number (210) 361-93[2]1." Answer ¶ 20.

Plaintiff had no existing business relationship with Defendant and never provided Defendant with his express written consent to be contacted with a prerecorded call and text

messages. Compl. ¶¶ 26–28. Defendant's calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B). *Id.* ¶ 25. These voice and text messages caused Plaintiff actual harm, including wasted time and invasion of privacy. *Id.* ¶¶ 32–35.

Based on these facts, Plaintiff charged Defendant with violating the Prerecorded Voice, 47 U.S.C. § 227(b)(1)(A)(iii), and the DNCR provisions, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2), of the Telephone Consumer Protection Act ("TCPA"). Compl. ¶¶ 47–68. He seeks to represent both himself and two classes of similarly situated individuals. *Id.* ¶ 37.

## III. LEGAL STANDARD

The standard on a motion for judgment on the pleadings under Rule 12(c) is the same as a motion to dismiss under Rule 12(b)(6). *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "The court 'accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Id.* (quoting *In re Katrina*, 495 F.3d at 205). The complaint must "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV. DEFENDANT'S MOTION MUST BE DENIED BECAUSE TEXT MESSAGES ARE "TELEPHONE CALLS" UNDER SECTION 227(c)(5) OF THE TCPA.

Defendant's Motion arguing that text messages are not "telephone calls" under Section 227(c)(5) of the TCPA flies in the face of the significant precedent within the Fifth Circuit reaching the opposite conclusion. Not a single case favors Defendant. *See* Order at 5 n.2, *Franky v. King. Lasik, Inc. P.S.*, No. 1:26-cv-00632-DAE (W.D. Tex. Sept. 11, 2026), ECF No. 11 ("The Court denies Boost's request to follow the Seventh Circuit in *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026), by holding that only telephone calls and not text messages fall within the private right of action created by § 227(c)(5). Both this Court and the court hearing the

underlying action have held to the contrary."); *Callier v. Am. Auto Grp., LLC*, No. 3:25-cv-00231-LS-MAT, 2026 WL 1741206, at *8 (W.D. Tex. May 29, 2026) ("The Court is persuaded by the reasoning of the overwhelming majority of cases confirming . . . that text messages are actionable under § 227(c)(5)."), *rep. & rec. adopted*, 2026 WL 1738124 (June 16, 2026); *Callier v. United Fundings LLC*, No. 3:24-CV-00363-LS-MAT, 2026 WL 1623421, at *8 (W.D. Tex. Apr. 15, 2026) ("Ultimately, the Court's interpretation aligns with the weight of authority, confirming that text messages are actionable under § 227(c)(5)."); *Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149-DCG, 2026 WL 319779, at *6 (W.D. Tex. Jan. 13, 2026) (same); Rep. & Rec. at 15, *Callier v. Reovations Unlimited LLC*, No. 3:25-cv-00108-LS (W.D. Tex. Aug. 12, 2026), ECF No. 16 (same); *Alvarez v. Fiesta Nissan Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at *6 (S.D. Tex. Jan. 26, 2026) ("[B]oth the original text and context support reading § 227(c)'s cause of action to include text messages[.]"); *Callier v. Finish Line Inc.*, No. 3:25-CV-2331-B-BK, 2026 WL 2654093, at *6 (N.D. Tex. Aug. 19, 2026) ("In sum, the TCPA's text, statutory scheme, and relevant authorities support the conclusion that § 227(c)(5)'s private right of action applies to text messages."); *McGonigle v. Shopperschoice.com, L.L.C.*, No. 25-152-SDD-RLB, 2026 WL 413198, at *6 (M.D. La. Feb. 13, 2026) ("[T]he Court finds that Subsection 227(c)(5) applies to cell phone text messages."); *see also Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) ("Addressing similar facts, some of our sister circuits have reached the same conclusion: '[T]elemarketing text messages . . . present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.'") (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

The reasoning in Defendant's Motion also fails to hold—its very own case law reveals as much. Accordingly, the Motion must be denied in its entirety.

**A. The Plain Meaning of Section 227(c)(5) Encompasses Text Messages.**

Defendant's plain meaning argument fails to hold. Proponents of the narrow view of Section 227(c)(5), including Defendant, routinely have three fatal flaws in their arguments: (1) they cherry-pick and misinterpret definitions they deem favorable to the exclusion of other, equally applicable definitions, (2) they misconstrue the definitions they rely on, and (3) they fail to acknowledge that statutes are meant to be applied to technologies that may not have been in existence when they were drafted.

Both *Steidinger* and *Stockdale*, upon which Defendant heavily relies, define "telephone" as "[a]n instrument for reproducing sounds at a distance[,]" and "call" to mean "to get into or try to get into communication by telephone." *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 535–36 (7th Cir. 2026) (quoting *Telephone*, Webster's Ninth New Collegiate Dictionary (1991), and *Call*, *id.*); *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 625 (N.D. Ohio 2026) ("In 1990, Webster's Dictionary defined the noun 'call' as 'the act of calling on the telephone' and 'telephone' as 'an instrument for producing sounds at a distance . . . 'one in which sound is converted into electrical impulses for transmission by wire.'") (quoting Merriam-Webster New Collegiate Dictionary (9th ed. 1990));[1] *Richards v. Shein Dist. Corp.*, No. 1:25-cv-01385-TWP-TAB, 2026 WL 847584, at *2 (S.D. Ind. Mar. 26, 2026) (adopting these definitions) (quoting Merriam-Webster New Collegiate Dictionary (9th ed. 1990)); *Rush v. Selectquote Ins. Servs., Inc.*, No. 6:26-cv-03157-MBB, 2026 WL 2495598, at *2 (W.D. Mo. July 30, 2026) (same). *See also James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1370–71 (M.D. Fla. 2026) (defining "the noun 'call' as 'an act or instance of telephoning,' or 'the act of calling on the telephone,'" and

---

[1] The *Stockdale* court mistakenly described this definition of "call"—"the act of calling on the telephone"—as its noun form. *See* 825 F. Supp. 3d at 625. However, this is clearly the verb form, as it defines "call" as an action.

"telephone" as "'an apparatus, system, or process for transmission of *sound or speech* to a distant point,' and 'an instrument for *reproducing sounds* at a distance . . . one in which *sound is converted* into electrical impulses for transmission by wire[.]'") (quoting The Random House Dictionary of The English Language 297, 1952 (2d ed. 1987) (emphasis added), and Mirriam-Webster's Collegiate Dictionary 162, 1211 (10th ed. 1993) (emphasis added)).[2] These cases therefore define "call" according to its verb form, and "telephone" by its noun form.

Plaintiff's cases from within the Fifth Circuit take a broader approach, recognizing both the verb and noun forms of "telephone" and agreeing on the definition of "call." Indeed, *Alvarez* agrees that the noun form of "telephone" when the TCPA was enacted was "'an instrument for producing sounds at a distance; *specif* : one in which sound is converted into electrical impulses for transmission by wire.'" *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at *4 (S.D. Tex. Jan 26, 2026) (citing Webster's Ninth New Collegiate Dictionary 197 (1990)). But it also acknowledged that "[w]hen used as a verb, to 'telephone' is to 'communicate by telephone,' to 'send by telephone,' or to 'speak to by telephone.'" *Id.* (citing same). *See also Shopperschoice.com*, 2026 WL 413198, at *4–5 (adopting these definitions); *Finish Line*, 2026 WL 2654093, at *4 (adopting the analyses in *Alvarez* and *Shopperschoice.com*).

Despite relying on many of the same contemporaneous definitions as Plaintiff's sources, Defendant and its authorities cherry-pick the form each word takes according to the favorability of their definitions without another logical reason. They assume that the word "call" should be understood to mean "to call" instead of "a call"—i.e., in its verb form as opposed to its noun form. And conversely, it assumes that "telephone" should be understood to refer to "a telephone" instead

[2] *Smarter Contact* makes the same mistake of defining "call" according to its verb form and labelling it the noun form. *See* 828 F. Supp. 3d at 1370–71.

of meaning "to telephone" someone—i.e., in its noun form as opposed to its verb form. This begs the question: If the definitions quoted by Defendant's cases are valid, why are the other definitions of the same words from the same sources somehow invalid? Neither Defendant nor its authorities provide an answer.

Even assuming Defendant's position that the noun form of "telephone" is correct, basic linguistic principles reveal that Defendant and its cases, including *Steidinger*, misinterpret this definition. *See Steidinger*, 182 F.4th 535–36 (defining "telephone" as "an instrument for reproducing sounds at a distance."). The head noun or subject of the definition is "instrument." The remaining text—"for reproducing sounds at a distance"—acts as a functional modifier. The definition is about the instrument itself, and the functional modifiers are features that identify these objects as belonging within this category of instrument.[3] Defendant and *Steidinger* mistake the definition's functional modifiers as its subject. Said otherwise, they fail to acknowledge that the purpose of the definition's noun form is necessarily ***to identify the noun***, not to limit its functions.[4]

Defendant and its sources misapply this definition. Defendant relies on *James v. Smarter Contact Inc.*, 828 F. Supp. 3d 1367, 1371 (M.D. Fla. 2026), for the premise that "a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." Mot. at 4, ECF No. 17. *See also Stockdale*, 825 F. Supp. 3d at 625–26 ("Under these definitions, 'telephone call' could not include

---

[3] Moreover, this definition of "telephone" does not state that "reproducing sounds at a distance" is exclusive of all other functions.

[4] The same is true of the alternate definition of "telephone" provided by *Smarter Contact*: "'an apparatus, system, or process for transmission of *sound or speech* to a distant point.'" 828 F. Supp. 3d at 1370–71 (quoting The Random House Dictionary of the English Language 1952 (2d ed. 1987) (emphasis added)). *Smarter Contact* emphasizes the identifiable *function* of the "apparatus, system, or process" without realizing that the subject of the definition is the "apparatus, system, or process" itself.

modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance."). This an absurd application of the relevant definitions to the question presented. Clearly, a text message is not a telephone, which in 1991 was understood to reproduce sounds at a distance—it is a communication *sent* by a telephone, just like a voice call.[5] It therefore does not need to meet the definition of "telephone"; it simply needs to constitute a "call" made by a "telephone." Defendant and its authorities concede that the definition of "call" is not limited to voice calls—it "meant 'to get or try to get into communication by telephone.'" *Steidinger*, 182 F.4th 536. Whether the communication reproduces sounds at a distance is therefore irrelevant. The ultimate question is whether a text message is an attempt "to get or try to get into communication" using the instrument called a telephone. The answer is yes.

Moreover, Defendant's conclusion that the plain meaning of "telephone call" does not include a text message only follows if "telephone" is defined using its noun form. On the other hand, Plaintiff's conclusion follows regardless of whether "telephone" is defined as a noun or verb. Under Plaintiff's conception and using the noun form, whether the communication is a "telephone call" is determined by whether the communication or call was sent by the instrument identified as a telephone. The verb form also works: a text message is "communicated by telephone," "sen[t] by telephone[,]" and constitutes the act of speaking by telephone. *Alvarez*, 2026 WL 202930, at *4 (citing Webster's Ninth New Collegiate Dictionary 197 (1990)).

Under Defendant's conception, however, only the noun form works and only if the definition is understood to confine the telephone to the capability identified in the description. But this description was meant to illuminate the category of instrument, not to confine it based on capability. Defendant does not and cannot argue that a modern cell phone is not a "telephone"

[5] A voice call is not a "telephone" either, as it is not an "instrument."

because it is able to do more than reproduce sounds at a distance. That would be illogical. But Defendant's interpretation suggests just that.

Ultimately, "[i]n their full context, words mean what they conveyed to reasonable people at the time they were written—with the understanding that general terms may embrace later technological innovations." *Alvarez*, 2026 WL 202930, at *4 (quoting *United States v. Palomares*, 52 F.4th 640, 648 (5th Cir. 2022) (Oldham, J., concurring) (quoting A. Scalia & B. Garner, Reading Law 16 (2012)). "For that reason, 'a 2012 statute referring to aircraft, if still in effect in 2112, would embrace whatever inventions the label fairly embraces, even inventions that could not have been dreamed of in 2012.'" *Id.* (quoting Scalia & Garner, *supra*, at 16). *See also id.* ("Judge Easterbrook wrote that a "'mower" is not limited to the thing called a mower today,' because '[a] statutory word of description does not designate a particular item . . . but a *class of things* that share some important feature.'") (quoting *In re Erikson*, 815 F.2d 1090, 1092 (7th Cir. 1987) (emphasis added)); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1007–08 (N.D. Ill. 2010) ("[S]tatutes must be permitted to apply to technologies not in existence when a statute was drafted. . . . Indeed, the legislative history of the TCPA reflects that Congress anticipated future technologies when it enacted the statute.") (citing *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984); 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings) ("The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies.")). Defendant's point that "[t]he TCPA was enacted in 1991, before text messaging became widespread in the United States[,]" and its ultimate conclusion, ignore this principle.[6] Mot. at 6.

---

[6] Though it ultimately lost sight of this principle, even *Stockdale* acknowledged this:

> Congress can, and often does, enact statutes broad enough to cover future factual situations unimaginable at the time of enactment. The question before this Court is

**B. The Statutory Structure and Purpose Confirms That Section 227(c) Covers Text Messages.**

The statutory structure of the TCPA confirms that "telephone call" in § 227(c)(5) includes text messages. Section 227(c) is entitled "[p]rotection of subscriber privacy rights." 47 U.S.C. § 227(c). Section 227(c)(1) then instructs the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object." *Id.* at § 227(c)(1) (emphasis added). The breadth of the FCC's authority was confirmed by Congress in its instruction to the FCC to "consider whether there is a need for *additional Commission authority to further restrict telephone solicitations*[.]" *Id.* at § 227(c)(1)(D) (emaphsis added). The statute then defines "telephone solicitation" to mean the "initiation of a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" *Id.* at § 227(a)(4). This makes it clear that the purpose of Section 227(c) was to protect residential telephone subscribers' privacy rights, that the scope of this protection was extended to telephone calls *and* to messages, and that Congress intended to confer enough authority to the FCC to effectuate this purpose.

It is through this lens that the Court must consider Section 227(c)(5). Section 227(c)(5) is the mechanism through which private consumers can seek relief, thereby enforcing the FCC's regulations. If "telephone call" were interpreted narrowly as Defendant suggests, then the FCC's regulations would be broader than the private right of action but not broader than its statutory grant of power. Indeed, 47 C.F.R. § 64.1200(c) prohibits "telephone solicitation[s]" sent to "residential telephone subscribers"; 47 C.F.R. § 64.1200(d) prohibits "any call for telemarketing purposes to a

---

> not whether the enacting Congress intended to cover some specific technology that did not yet exist, but whether the *language* of the statute it enacted does, in fact, cover this specific later-developed technology.

825 F. Supp. 3d at 626 n.6 (emphasis added).

residential telephone subscriber"; and 47 C.F.R. § 64.1200(e) explicitly states that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers[.]" If "telephone call" were interpreted narrowly to include only voice calls, then the FCC's regulations could not be fully enforced.

It would also violate the bedrock principle of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). Here, "telephone call" is used in both Section 227(b) and in Section 227(c). Interpreting "telephone call" as having different meanings in each section would violate this canon. *See also Better Homes & Gardens*, 2026 WL 2455150, at *4 (applying this principle in rejecting the argument that "call" has a different meaning in different TCPA provisions).

Ultimately, Congress enacted the TCPA to protect consumer privacy from unwanted solicitations. This is clear as day from the very text of the statute. *See* 47 U.S.C. § 227(c) (entitled "Protection of subscriber privacy rights"); *id.* at §227(c)(1) (instructing the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object."); *5 Star Nutrition*, 998 F.3d at 690 ("Addressing similar facts, some of our sister circuits have reached the same conclusion: '[T]elemarketing text messages . . . present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.'") (quoting *Van Patten*, 847 F.3d at 1043). Excluding text messages from the TCPA's Do-Not-Call protections would create a loophole that would contradict the purpose and text of Section 227(c).

**C. Defendant's Argument About the FCC's Interpretation is Incorrect.**

As a threshold matter, Defendant's argument about deference to the FCC's interpretations is wrong. The FCC has done more than "suggest[] at time that § 227(c) covers text messages"—it explicitly "codif[ied] that the National DNC Registry's protection s apply to text messages." *In re Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 38 FCC Rcd. 12247, 12249 ¶ 2 (2023).

Moreover, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), did not hold that courts should interpret statutes "without deference to agency readings." Mot. at 8. That goes too far. *Loper Bright* **does away with *Chevron* deference, specifically**, holding that it "cannot be squared with the APA." 603 U.S. at 396. The APA, however, remains in full force and prescribes different standards of review of agency actions depending on the amount of authority statutorily delegated to that agency. *See id.* at 412–413. It also directs courts to "**seek aid** from the interpretations of those responsible for implementing particular statutes"—*i.e.*, from agencies like the FCC. *See also Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168, 179–80 (2025) ("[W]hen an agency interprets a statute, judicial review of the agency's interpretation is *de novo*. But when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard.") (citing *Loper Bright*, 603 U.S. at 391–92; *Motor Vehicle Mfrs. Assoc. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 42 (1983); *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)).

*McLaughlin* echoes this. Instead of dictating that courts are to interpret statutes "without deference to agency readings" as Defendant claims, Mot. at 8, it asks them to "afford[] ***appropriate respect*** to the agency's interpretation." 606 U.S. at 155 (citing *Loper Bright*, 603 U.S. at 402)

(emphasis added). And in a footnote, it explicitly states that this judicial review "of course may also include review of whether the rule or order was arbitrary and capricious under the APA or otherwise unlawful." *Id.* at 155 n.2. Accordingly, Defendant is incorrect—the Supreme Court did not do away with deference to agencies entirely.

### D. *Ortega* and *Bradford* Do Nothing to Further Defendant's Argument.

In the absence of Fifth Circuit case law supporting its position, Defendant reaches for case law from the Section 227(b) context and claims it is analogous. These cases are inapposite.

*Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809 (5th Cir. 2026), is not analogous to the issue presented here. There, the Fifth Circuit explained that "When Congress enacted the TCPA, 'express consent' meant consent that is 'directly given, either *viva voce* or in writing.'" *Id.* at 812 (quoting *Express consent*, Black's Law Dictionary (6th ed. 1990)). And "*viva voce*" meant "[w]ith the living voice; by word of mouth." *Id.* (quoting *Viva voce*, Black's Law Dictionary (6th ed. 1990)). Because the plain meaning of "express consent" as used in Section 227(b) explicitly included oral consent, the Court held that "[t]he statute provide[d] no basis for concluding that telemarketing calls require prior express *written* consent but not oral consent." *Id.* Said otherwise, the Court found the FCC's interpretation to directly contradict the plain meaning of "express consent" as it was understood when Congress enacted the TCPA.

The same is not true here. Interpreting "telephone call" to encompass text messages does nothing to directly contradict or limit its plain meaning as was the case in *Bradford.* Nothing in the definitions of "telephone" or "call" explicitly state that text messages are not within their scope, hence the nationwide split among courts. If anything, a correct understanding of these terms and the sentence structure of their definitions shows clearly that "telephone call" encompasses text messages.

*Ortega v. Sienna Marketing & Consulting Inc.*, No. SA-24-CV-00487-OLG, 2025 WL 899970, at *3–5 (W.D. Tex. Mar. 4, 2025), is even more dissimilar. The Court was not called to engage in statutory interpretation of the meaning of Section 227(b) or to determine whether an FCC holding was within its scope. *See id.* The Supreme Court had already "clarified the definition of what qualifies as an ATDS." *Id.* at *4 (citing *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021)). The *Ortega* Court simply applied this definition to the facts at hand and concluded that the plaintiff did not plausibly plead that the system at issue was an ATDS. *Id.* at *5. It did not "refuse[] to expand the statutory definition of ATDS beyond what *Duguid*'s plain-text analysis allows"—whether the Court would follow *Duguid* as required by *stare decisis* was never at issue. Mot. at 9. In contrast, here the Supreme Court has ***not*** clarified the definition of what constitutes a "telephone call" under Section 227(c)(5), hence the need for statutory interpretation.

### E. Defendant's Attempt to Distinguish this Circuit's Case Law on this Issue is Ineffective.

Defendant cannot escape the obvious: there are numerous decisions that directly address the issue of whether a text message is a "telephone call" under Section 227(c)(5) within the Fifth Circuit, and **none** agree with Defendant. *See supra* Section IV, at 3–4. Defendant cannot distinguish this fact away.

Indeed, while *Reovations Unlimited* and *American Auto Group* were decided on uncontested motions for default judgment, both courts explicitly "found text messages actionable under § 227(c)(5)." Mot. at 10. Their procedural posture does not detract from their ultimate conclusions.

Moreover, Defendant is blatantly wrong in claiming that these "opinions rely on FCC guidance, which, after *Loper Bright* and *Bradford*, is no longer entitled to deference." Mot. at 11. First, the *Reovations Unlimited* and *American Auto Group* did not "rely" on FCC guidance or defer

to it. **It simply agreed with it**. *See Am. Auto Grp.*, 2026 WL 1741206, at *8 ("The Court is persuaded by the reasoning of the overwhelming majority of cases confirming cell phones are residential phone for purposes of the act and more importantly, that text messages are actionable under § 227(c)(5)."); *Reovations Unlimited supra*, at 15 ("Ultimately, the Court's interpretation aligns with the weight of authority, confirming that text messages are actionable under § 227(c)(5)); *see also Duron*, 2026 WL 319779, at *6 (same). Nowhere in *Loper Bright*, *McLaughlin*, or any other authority of Defendant's does the Supreme Court say that each court to construe a statute must do so from scratch each time and is prohibited from finding the reasoning in precedent to be persuasive.

Second, *Bradford* has no binding effect on this Court or its decision under Section 227(c)(5)—it construed Section 227(b). And while *Bradford* applied the principles put forth by *Loper Bright* and *McLaughlin*, it did not impose any new requirements on Courts below in interpreting statutes delegated to agencies. *See* 167 F.4th at 811–812. Defendant again reiterates the faulty conclusion that the FCC is "no longer entitled to deference," despite Supreme Court authority making it clear that it is no longer entitled to ***Chevron*** deference. Mot. at 11; *see supra* Section IV.C.

Third and finally, Defendant is correct that *Steidinger* is persuasive, but it is *only* persuasive. It is an out-of-circuit decision that that this Court has already rejected. *See* Order at 5 n.2, *Franky v. King. Lasik, Inc. P.S.*, No. 1:26-cv-00632-DAE (W.D. Tex. Sept. 11, 2026), ECF No. 11 ("The Court denies Boost's request to follow the Seventh Circuit in *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026), by holding that only telephone calls and not text messages fall within the private right of action created by § 227(c)(5). Both this Court and the

court hearing the underlying action have held to the contrary.”). A contrary conclusion is not warranted here.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant’s Motion for Partial Judgment on the Pleadings in its entirety and hold that the term “telephone call” encompasses text messages under 47 U.S.C. § 227(c)(5).

Dated: October 6, 2026

Respectfully submitted,

**SHAMIS & GENTILE, P.A.**
*/s/ Christopher Berman*
Christopher Berman, Esq.
14 NE 1st Ave., Ste. 705
Miami, FL 33132
Tel.: (305) 479-2299
cberman@shamisgentile.com

*Counsel for Plaintiff and the Putative Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2026, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which automatically serves all counsel of record.

*/s/ Christopher Berman*
Christopher Berman, Esq.